JANVIER, Judge.
Plaintiff, an insurance solicitor, seeks recovery in tort from defendant, a corporation engaged in the sale and repair of automobiles for the alleged illegal retention of his 1953 Chevrolet automobile used in his business and, in an abortive attempt to negotiate for the purchase of a new car, left with defendant in order that its value as a “trade” might be agreed upon. He alleges that he executed a written offer for the purchase of a new car and that his offer was rejected.
Defendant admits that the car was left with it by plaintiff, but avers that this was the result of a written contract entered into between it and plaintiff in which all the terms of the trade and purchase were set forth; that it has always been ready, willing and able to complete the transaction by the delivery of the new car to plaintiff, but that he has refused to comply with the terms of the contract. Defendant prays that the suit be dismissed at the cost of plaintiff and that he be ordered to comply with the terms of the written contract.
In his petition plaintiff prayed for judgment for the alleged value of the 1953 automobile, which value he fixed at $1,500, for $1,500 for embarrassment, $1,500 for mental anguish, $2,000 for the loss of the use of the car and other personal property which he alleges was in it, and $88 as the value of the other items of personal property.
From a judgment for $1,859.76 in favor of plaintiff, defendant has appealed suspen-sively.
Plaintiff has answered the appeal praying that the amount awarded be increased.
Since the total claim as set forth in the petition is $6,588 and since no part of the claim represents physical injury, there might be some doubt as to whether there is jurisdiction in this Court since, unless there are physical injuries or claims for workmen’s compensation, our jurisdiction is limited to disputes which involve not more than $2,000. However, as a result of several very recent decisions of the Supreme Court, we think that the rule is now established that monetary jurisdiction on appeal depends upon the evidence in the record and cannot be determined as a result of a reading of the pleadings or of affidavits submitted. See Goins v. Gates, 229 La. 740, 86 So.2d 691; Castleberry v. Ethridge, 223 La. 466, 65 So.2d 138; Duplantis v. Locascio, 223 La. 11, 64 So.2d 624.
Since, as a result of our perusal of this record, we feel that under no circumstances may the judgment be increased to more than $2,000, we conclude that, under the cited decision, we have jurisdiction. Had the record indicated that liability might exceed $2,000, a very interesting jurisdictional problem might have been presented for then had we transferred the matter to the Supreme Court and had that Court not agreed with our appreciation of the amount in dispute, it might have retransferred the matter back to us.
When the matter came to trial in the District Court, it immediately became apparent that the all important issue was the question of whether the document relied *696 on by defendant as a contract had in fact ever become a binding agreement as a result of the timely acceptance by defendant of the offer made by plaintiff and evidenced by the document in question.
Plaintiff conceded that he had actually signed the offer to buy the new car and that all of the terms of the offer except the total price of the new car were set forth in the document produced by defendant, but he contended that his said offer had been rejected by defendant and that he had left the document in defendant’s possession. That thus there had never come into existence any contract.
Defendant, on the other hand, producing the document, contended that it was a completed contract and that thus plaintiff should not be permitted to introduce any evidence tending to vary or contradict the terms of that contract, particularly since no plea of fraud was made by plaintiff, and, on this contention, counsel for defendant objected to any evidence tendered by plaintiff.
In answer to this objection counsel for plaintiff argues that there has been no effort to vary or contradict the terms of a written contract, but that the evidence was tendered to show that no contract had ever come into existence and counsel contends that no plea of fraud was necessary since he did not sue on the contract, which was offered by defendant in answer to the petition of plaintiff. The argument is that since, under our system of pleading, there is no opportunity for rebuttal pleading, plaintiff could not expressly plead fraud after the contract was produced and relied upon by defendant. Counsel for plaintiff further contends that, as a matter of fact, the petition of plaintiff should be interpreted as a plea of fraud.
It seems to us that the allegation of plaintiff that, though he had signed an offer, this offer was immediately rejected, when considered in connection with the averment of defendant that the offer was accepted, constitutes a charge that the acceptance which is relied on by defendant was placed on the document after it had first been rejected. Thus, we feel that the petition should be interpreted as charging fraud.
Then, too, the defense relied on here is not an attempt to vary or contradict the terms of a written contract, but is rather an effort to show that a contract never came into being. Surely if an offer is made and it is allowed to remain in the possession of the other party who later produces it and says that there was timely acceptance of it, evidence to show that the acceptance was affixed after it had first been rejected, does not tend to vary or contradict but rather tends to show that no contract ever came into being.
We considered this identical contention in Harvey v. Aaron, 2 La.App. 288. The facts found there cannot be distinguished from those appearing here. There the plaintiff executed a written offer to purchase real estate. He contended that the offer had been immediately rejected. Later the offer was produced and on it there appeared the acceptance of the owner of the property. When evidence was tendered to show that the offer had first been rejected, it was objected to on the ground that it would tend to contradict or vary the terms of a written contract. We held that the evidence was not tendered for the purpose of varying or contradicting the terms of the contract but to show that there had never been a contract, saying:
“On the trial of the case plaintiff’s counsel objected to parol evidence to prove a rejection of defendant’s offer upon the ground that it tended to alter or contradict the written offer of defendant which had been accepted by the owner of the property. The objection was not sustained and we do not think it should have been since we fail to see how it contradicts the terms of the offer which was to be irrevocable *697 before November 12th so far as defendant was concerned but subject to rejection by the owner of the property at any time.”
For these reasons, first, because fraud seems to be pleaded in the allegations of the petition and, second, for the reason that the evidence offered was admissible as tending to show that no contract was ever entered into, the evidence tendered by plaintiff was properly admitted.
The evidence of plaintiff is not in any sense contradicted by anything offered by defendant. In fact, defendant produced no evidence at all except the document relied upon as a contract. Only one of the employees of defendant, who was mentioned by plaintiff in his version of the affair, appeared as a witness and he was called by plaintiff for cross-examination under LSA-R.S. 13:3662, Act 115 of 1934.
In the absence of any such contradictory evidence, we find that counsel for plaintiff in his brief has set forth with commendable accuracy just what plaintiff said had occurred, and we are convinced that not only is that the correct version of the affair but also that it is told in detail in counsel’s brief. We therefore quote the following from that brief:
“On January 20, 1956, the appellee Fernin J. Farrell, went to the premises of the appellant, Mike Persia Chevrolet Company, Inc., for the purpose of negotiating the purchase of a new automobile. Appellee owned and was driving a 1953 Chevrolet Belaire which he had purchased from the defendant previously. The salesman who sold ap-pellee the automobile was one Tom Conners. While at the defendant’s premises on January 20, 1956, the ap-pellee negotiated with Conners regarding the possible purchase of a new automobile and the trade-in of the car which he owned. The total sum of these negotiations amounted to the ap-pellee signing the document, which the defendant subsequently set up as a defense to this suit, and its immediate rejection by the appellant. This document on its face called for the delivery of a new 1956 model automobile and the trading in of the 1953 Chevrolet as partial payment leaving a cash balance of $1,420.00, plus three per cent (3%') sales tax on an unspecified sum of money. Across the face of the document in question appears these words: ‘This order is not binding until accepted by dealer.’ Underneath this wording is a place for the purchaser’s signature, and underneath that is a place for the dealer to note his acceptance. After the appellee signed this document, it was taken by Mr. Conners to a superior at the defendant’s premises, who informed the appellee that his proposition could not be accepted, and, at the same time, made to the plaintiff a counter-offer which called for an additional payment over and above the value of the trade-in, of some $1,535.00. The plaintiff rejected the counter-offer, left the defendant’s premises, taking with him his 1953 Chevrolet.
“Plaintiff later negotiated with another Chevrolet dealer and received an offer which was substantially better than the one which the defendant had made him.
“On January 23, 1956, the appellee, while driving his automobile by the premises of the defendant, saw Con-ners, with whom he was friendly, and stopped and informed him of the proposition made by the other dealer. Con-ners then requested that appellee discuss the matter with a sales manager for the defendant. Appellee did so, and this sales manager, whose name is Conti, requested that plaintiff leave his automobile for reappraisal in order that a possibly better offer could be made to the appellee. The appellee *698 advised that he was in need of an automobile for his business, and the defendant allowed him to use one of its automobiles while his was being reappraised.
“The appellee returned to the defendant’s premises the same day, January 23, 19S6, bringing with him the automobile which had been loaned him by the defendant. He requested to see Tom Conners; after a wait of approximately ten minutes Conners made an appearance and immediately requested of the appellee the keys to the company automobile which appellee had been using. The appellee gave Conners the keys and was then advised that he would have to see a Mr. Oubre, still another sales manager for the defendant. Appellee went into Mr. Oubre’s office, and Oubre demanded of him why was he so hard to please.
“His words were offensive to appel-lee, who so advised Oubre, and further advised him that he wanted his keys to his automobile, as he was going elsewhere to do business. Oubre then took the keys to appellee’s automobile, which had been on top of his desk, placed them in the desk drawer, and advised appellee that he, appellee, had bought another automobile and that ‘that was business.’
“The appellee demanded his keys and they were refused him. The appellee sought an audience with Mike Persia, Sr., and was told that he was out of the city.
“The appellee then reported the matter to the police, to the District Attorney’s office, and consulted counsel.
“From the time that plaintiff signed the document, which the defendant pleads as a defense, on January 20, 19S6, until the same document was shown him during the trial, he had not seen it. He was never advised by the defendant or any of its agents that they desired to accept any offer which he had made. Any offer which was made in the written document had been rejected by the defendant at the time the document was signed by appellee.”
We would add only the rather remarkable fact that defendant did not even produce the employee who is supposed to have executed the acceptance of the document to show that the acceptance was affixed when the offer was made and was not placed on the document after the offer had first been rejected.
Because of the conclusions which we have reached it is not necessary that we discuss the other contentions of plaintiff.
We think the evidence justifies the amount awarded. However, since plaintiff states that there is a chattel mortgage on the automobile which defendant now has, it will be necessary that he clear the title to that car for, since he is claiming that defendant, by retaining his car owes him the-full value, it follows that he must deliver a clear title.
Since, by the unlawful detention of his car, plaintiff has been deprived of its use for almost a year, it would not be proper to order that the car be returned to him. Justice will best be served by requiring that defendant retain the car and pay plaintiff the value which it had when it first came into its possession.
The judgment appealed from is affirmed at the cost of appellant, this decree to become executory upon delivery by plaintiff to defendant of a clear unencumbered title to the 1953 automobile in question.
Affirmed.